Curia, per JohNson, Ch.
This cause was argued in the equity Court of Appeals at the last sittings in Charleston, and that court, supposing that there was error in a matter of law in the opinion of the law court in the case of the State ex relatione Simmons vs. Watson, 2 Speers, 97, to be hereafter noticed, out of which this case arises, but which was binding on the equity court as authority, has directed it to be brought up here, that the judgment of the law court may be examined and revised.
This cause was heard on the circuit, on the bill and answer, without argument, and from the report of the law case and the concessions of the counsel, it appears now that some facts, material, perhaps, to a full view of the whole case, do not appear in ■the bill and answer ; with these additions the case is this.
On the 22d July, 1842, the late Caroline Mayrant, the relict of the late Charles Mayrant, executed the following paper writing, which is conceded on all hands to be her last will and testament, and died shortly after, that is to say :
“It is my wish that my children should be under the guardianship of my brother-in-law, Samuel Mayrant, and my sister, Mrs. Simmons ; and I request my sister (should I be removed) to take my daughters to live with her, and to be under her particular guidance and directions, as she has kindly oífered. I leave more particularly to Mr. S. Mayrant the charge and direction of my sons ; and I think that the oldest should, for two or three years, go to a good school, to prepare him for some useful and respectable course of life, which he must select, with the concurrence of his uncle. I earnestly hope and advise, when selected he will adhere to it. With respect to the younger, he is still such a child that what is best for him can only be judged when his character is more developed, and leave to his uncle and aunt to do by him what they deem best. It appears to me that the opinion of the father was, that his sons should have a good education out of the property, and as much as was a *454 necessary outfit for pursuing the profession or business, and the remainder to be divided between my daughters ; and it is my desire this should be carried into effect, according to the judgment of my brother-in-law, Mr. Samuel Mayrant.”
“I sign this now, to be formally executed as my will at a more convenient time, after Mr. S. Mayrant’s arrival here.”
From what transpired at the argument here, I conclude that upon the first examination of this will it did not occur to the appellant, Samuel Mayrant, or any one else, that he was constituted the executor, either directly or indirectly, or according to the tenor ; and, under the impression that he was not, Mrs. Simmons applied to and obtained from the ordinary, the complainant, an order appointing her administratrix with the will annexed, on condition of her entering into bond in the penalty of $60,000, with six sufficient sureties, a majority of whom should reside in the District of Greenville, of which he was the ordinary. She did not give the security required, and some time afterwards, but how long after the order referred to does not appear, the complainant, I suppose upon being better advised, came to the conclusion that the appellant was legally constituted executor of the will, and thereupon, and without notice to Mrs. Simmons, issued letters testamentary to him, which of course superseded the order granting administration to her. She did not obtain knowledge of this proceeding until after the time limited by law for appealing from the judgment of the ordinary had passed, and she therefore applied to the law court for the writ of mandamus to compel the complainant so to modify the order granting administration to her, as to dispense with the residence of the sureties to the bond required being in the District of Greenville. Mrs. Simmons was comparatively a stranger in Greenville, and most of her friends resided in a distant part of the State, and the effect of the order requiring her to give as sureties persons residing in Greenville, would be to put it out of her power to comply with the terms; hence the necessity of the application for the writ of mandamus. The defendant was not formally a party to this proceeding, not having had formal notice of it by Mrs. Simmons or otherwise ; but he appeared by counsel and shewed cause against the issuing of the writ, but it was, notwithstanding, ordered, and the order was affirmed in the Court of Appeals in the case referred to. The complainant, feeling himself definitively bound by that judgment, and without notice to the defendant, made an order re- *455 yoking the letters testamentary granted to him, and upon Mrs. Simmons afterwards giving him notice that she would no further prosecute her claims to the administration, and no other application having been made, he filed this bill, to obtain possession of the estate as derelict, in pursuance of the provisions of the Act of 1839. (a)
The whole merits of the case turn upon the question whether the defendant, Samuel Mayrant, is or is not, by the will itself, constituted the executor ; and what I have to remark upon the case will be principally confined to it.
The necessity for even that, is in a great degree superseded by the strong and clear view which my brother Butler has put upon it, in the opinion of the minority of the court in the' State ex relatione Simmons vs. Watson, in which I entirely concur.
The law has very clearly defined what the office and duty of an executor are, and if a testator in his will nominate or appoint one the executor thereof without more, that is enough, and is the ordinary mode, because the term itself sufficiently indicates his rights, powers and duties. But that is not indispensable ; the same rights, powers and duties may be expressed and defined by other terms. Thus if a testator by his will authorize one to take possession of his whole personal estate, to make an inventory and appraisement, and to pay his debts and legacies, (fee. without saying he shall be executor, he will notwithstanding be entitled to the administration, because these are the duties which belong to an executor, and the appointment of an administrator with the will annexed would be wholly nugatory. So if the testator direct that one shall have the sole management of his whole estate, this would confer on him all the powers of an executor, although he is not so expressly named in the will. This position is fully sustained by the references in 1 Wms. on Ex’ors. 123, referred to by Judge Butler in the State ex relatione Simmons vs. Watson, 2 Speers, 106-7-8. Toller, in his treatise on the law of executors and administrators, page 15, holds the same language. He says that the appointment of an executor may be express or implied. “He may be constructively appointed merely by the testator’s recommending or committing to him the charge of those duties which it is the province of an executor to perform, or by confering on him those rights which properly belong to the office, or by any other *456 means'from which the testator’s intention to invest him with that character may be distinctly infered. As if a will directs that A. shall have the testator’s personal property after his death, and, paying his debts, shall dispose of it at his pleasure ; or declares that A. shall have the administration of the testator’s goods; this alone constitutes A.' an executor according to the tenor. So where the testator, after giving various legacies, appointed that his debts and legacies being paid, his wife should have the residue of his goods, on condition that she gave security for the performance of his will: this was held to make her executrix. And so, where an infant was nominated executor, and A. and B. overseers, with this direction, that they should have the control and disposition of. the testator’s effects, and so should pay and receive debts till the infant came of age, they were held to be executors in the mean time.”
Pickering vs. Towers, Amb. 364, is an illustration of the rule. There the testator, after having devised certain real estates, gave several legacies, and appointed P. W. and two others to “receive and pay the contents before mentioned.” Held by the ecclesiastical court, upon litigation, that the appointment to receive and pay the contents constituted them executors.
The leading dispositions of this will are limited to two distinct objects; 1st, providing guardians for the testatrix’s children, and 2d, the disposition of her estate; and they are so distinctly marked, although both are embraced in the same sentence, that it is impossible to confound them. The first is expressly confided to the defendant, Samuel Mayrant, and Mrs. Simmons jointly, — the sons more particularly to the former, and the daughters more particularly to the latter. The second, according to the correct reading of the will, is confided exclusively to the defendant.
The will, in regard to the estate, in legal effect provides that the sons shall “have a good education out of the property,” and as much as should bo necessary as an outfit “for pursuing the profession or business” which they might select, and that the remainder should be divided between the daughters ; — “and it is my desire,” adds the testatrix, that “this” (not the guardianship of the children, for she had before provided for that) “should be carried into effect according to the judgment of my brother-in-law Mr. Samuel Mayrantand unless the pronoun this refers to the disposition of the property, it can have no operation at all, and that it does so, follows from the grammati *457 cal construction, the dispositions concerning the estate being the last antecedent. These remarks are intended to meet the suggestion that the powers confered on the defendant and Mrs. Simmons are joint and equal, as well with regard to the dispositions of the estate as the guardianship of the children.
The result of this reading of the will is, that all the dispositions in relation to the estate must “be carried into effect according to the judgment” of the defendant alone ; and the question recurs, whether this does or does not constitute him executor. Now, it is true that all the powers and duties of an exector are not expressly conferred on the defendant, but every thing is to be done according to his judgment — and certainly, very latitudinary powers are confided to him, at least in regard to the education and outfit of the sons; and to carry them into effect, the possession and use of funds, to an amount to be determined by his own discretion, was indispensable, and it was equally necessary that he should have the command of them when they were wanted. That was a matter on which the testatrix did not intend he should be controled ; and she never could have intended that an administrator should be interposed between him and the means of carrying her will into effect. In Pickering vs. Towers, the only powers expressly delegated to the executors were to receive and pay the legacies — and the judgment proceeded on the principle that the right to the administration was necessary to their execution. Here, the will charges the defendant with the education of the sons and providing an outfit for them. To discharge this duty, the power of supplying funds for that purpose was necessarily implied. It is not to be understood' that the grant of such a power would su-percede an executor expressly appointed, or special powers deleted to others — for a testator may, in his discretion, appoint one to execute his whole will, or distribute the powers amongst several. He may appoint one to administer his estate in Greenville, and another to administer that in Pickens. The question whether one is an executor by implication, or, as it is said, according to the tenor, never can arise when there is an executor by express appointment, and is, in fact, nothing but a question of intention, to be solved by the context of the will.
In the opinion of the court, in the State ex relatione Simmons vs. Watson, a doubt is thrown out whether the Act of 1839 has not exploded the whole doctrine of one’s being an executor according to the tenor. The Act provides that where the testa *458 tor has left a will in writing, without appointing an executor therein, the Ordinary shall grant administration with the will annexed, and is but the re-enactment of the law as it then stood, and had been ever since the statute of Wills, upon which the doctrine of executorship according to the tenor, was engrafted. It is not doubted that a testator may confide to any one whom he pleases, the management of his estate after his death ; and whether he do so by appointing him in terms the executor of his will, or confiding to him the duties which belong to that office, he is as effectually the executor as if he had been directly so nominated ; for the obvious reason, that there would be nothing left for an administrator with the will annexed to do.
It struck me that the question whether a mandamuslay in the State ex relatione Simmons vs. Watson, peculiarly belonged to the law court, and I did not entertain it in the discussion of this case on circuit, but it has been revived here, and it is, perhaps, fit that it should be disposed of, especially as there was a division upon it in the Law Court. It is well said by Mr. Justice O’Neall, in the case above referred to, that it is the proper remedy when there is a legal right, and no other legal remedy to enforce it, and I concur with him, that although Mrs. Simmons had the right to appeal, as of course, from the decree of the Ordinary granting letters testamentary to the defendant, she had lost that remedy, without any faulc on her own part, by not giving notice of the appeal within the time limited by the Act of 1839. She had no notice of the proceeding until after that time had elapsed, and had forfeited no right by any act or omission to act. .She had, therefore, I think, clearly a right to have the proceedings certified to the law court, and if the Ordinary refused to do it, and that whether she lost the right to appeal of course or not, mandamus was the appropriate and only remedy.
It is said in one of the grounds of appeal, that the defendant was not a party to the mandamus ; that he was not therefore bound, either by the order of the Law Court ordering it, or the execution of the order by the Ordinary.
The writ of mandamus lies in all cases, as before remarked, where there is a legal right without an appropriate remedy ; whether in matters which concern the public only, as when an inferior oificer refuses or neglects to discharge a public duty, or where he neglects or refuses to discharge his duty between party and party, as where an inferior Judge or Magistrate refuses to *459 try or award judgment in a matter of which he has cognizance. Bac. Abr. Mandamus, D. In both cases, the course of proceeding is to apply to the Court of Sessions for a rule to shew cause why a writ of mandamus should not issue. In the first, that is, where the public only is concerned, it is against the delinquent officer only, because the prosecuting officer represents the public interest. In the last, where the matter is between party and party, involving private interest, the rule issues also against the party interested. Bayly vs. Boorne, 1 Stra. 392, Brooke vs. Ewers, lb. 113, are examples, and that has been the uniform practice of our own courts. No party can be eifected or concluded by any judicial proceeding to which he is not a party or privy. It appears that no rule to shew cause ever issued against the defendant, or that he had any formal notice of the motion for the writ of mandamus, but he did, in fact, appear by his counsel, and opposed the order, and that was clearly a waiver of the right of notice, as all the objects are attained, and he is as much bound by it as if he had appeared to a suit in the Common Pleas, or pleaded to it when no process had been served on him. The act of coming in, made him a party.
The third ground of appeal insists that the order of the complainant as Ordinary, revoking the letters testamentary granted to the defendant, was a nullity, because, amongst other things, he was no party to it.
If the Law Court had made an express order that the letters testamentary should be revoked, I suppose there | would have been no necessity to make the defendant a party. Acting under such an authority, the office of the Ordinary would have been purely ministerial, and he had no discretion, but was obliged to perform it. But the order was, not that he should revoke the letters testamentary, but that he should grant letters of administration to Mrs. Simmons ; and if this order had been literally executed, it might have been made a question whether, without a revocation of the letters testamentary, the letters of administration would have superceded them. The defendant ought, therefore, to have been a party to the proceedings by which the letters testamentary were revoked; and not having been made a party, the order of revocation was irregular, and Mrs. Simmons having declined to prosecute her claim to the administration, the letters testamentary are still of force; and, as in law they were properly granted, the defendant cannot now be disturbed in the exercise of the rights and powers which they con *460 ferred. To avoid all future difficulties, the Ordinary ought, on the application of the defendant, to rescind the order revoking them.
It is ordered and decreed, that complainant’s bill be dismissed. I think, however, that the complainant ought not to pay costs, but that he ought to be indemnified not only for the taxed costs, but for the fees incurred by employing counsel. He has acted in good faith throughout, and with a view to discharge an official duty, rendered necessary by the order of the court, and the circumstances of the case; it is, therefore, further ordered and decreed, that the Commissioner of the court do ascertain and report what ought to be the amount allowed the complainant as a counsel fee to his solicitor in prosecuting this suit, and tax his costs, and that the same be paid by the defendant, out of the funds of the estate of his testatrix.
Harper and Dunkin, CC. and Butler and Frost, JJ. concurred.

 Acts 1839, p. 40.